Larry Gene SIMPSON, Appellant,

v.

The STATE of Texas, State.

No. 2–84–322–CR.

Court of Appeals of Texas,
Fort Worth.

May 21, 1986.

Mike McCollum, Dallas, and Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., and Mary Thornton Taylor, Asst. Dist. Atty., Fort Worth, for State.

Before FENDER, C.J., and HOPKINS and HUGHES (Retired, Sitting by Assignment), JJ.

1. Should appellant wish to re-urge the contention presented in his Motion for Rehearing which was overruled by our opinion of Febru-

## OPINION ON SECOND MOTION FOR REHEARING

HOPKINS, Justice.

We grant the State's Second Motion for Rehearing and withdraw our original opinion issued January 15, 1986, and our opinion on Motion for Rehearing issued February 26, 1986.[1] The following is substituted therefor.

Upon a plea of not guilty, a jury found the appellant guilty of the misdemeanor offense of possession of a controlled substance and assessed his punishment at confinement in the county jail for one year, plus a fine of $2,000.00. *See* TEX.REV. CIV.STAT.ANN. art. 4476–15, sec. 4.042(b) (Vernon Supp.1986).

We affirm the judgment.

Appellant's first ground of error is based on the trial court's failure, over appellant's objection, to instruct the jury that the burden of proof is on the State. Appellant acknowledges in his brief that the charge correctly instructed the jury as to the measure of proof that is required for a conviction, *i.e.,* beyond a reasonable doubt, but complains that the charge does not specifically state that the burden of providing this measure of proof rested on the State.

■ The court's charge should distinctly set forth the law applicable to the case. See TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1986). It is axiomatic that the law places the burden of proof on the State in criminal cases and it is proper for the court's charge to so instruct the jury. *Toler v. State,* 546 S.W.2d 290, 294 (Tex.Crim.App.1977). However, it is not reversible error to omit this specific instruction if the charge, when read as a whole, adequately informs the jury on the issue of the burden of proof. *Humphries v. State,* 163 Tex.Cr.R. 601, 295 S.W.2d 218, 220 (1956).

ary 26, 1986, a new motion for rehearing should be filed.

In paragraph VI of the charge the jury is instructed on the presumption of innocence and that each element of the offense must be proved beyond a reasonable doubt. Such an instruction has been held to be a sufficient charge on the burden of proof. *Day v. State*, 21 Tex.Crim. 213, 17 S.W. 262 (1886). In paragraph VII the court charged the jury that if it did not believe or if it had a reasonable doubt as to appellant's guilt it should find the appellant not guilty. This instruction has likewise been held to be a sufficient charge on the burden of proof. *Glascow v. State*, 50 Tex. Crim. 635, 100 S.W. 933, 937 (1907) and *see Gantz v. State*, 661 S.W.2d 213, 223 (Tex. App.—San Antonio 1983, pet. ref'd). Additionally, paragraph III instructs the jury that it must find beyond a reasonable doubt that the exhibits introduced by the State were amphetamines and that appellant had them in his possession.

Appellant's timely objection to the charge requires a reversal only if the error is calculated to injure the rights of the accused. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on rehearing). We hold that in reading the charge as a whole, the jury was adequately instructed as to the State's burden of proof and the omission of a specific instruction in that regard was not calculated to injure the rights of the appellant. There being no reversible error, appellant's first ground of error is overruled.

In grounds of error two, three and four, appellant alleges insufficient evidence of 1) appellant's care, custody and control over the contraband; 2) his knowledge that the contraband was amphetamine; and 3) appellant's affirmative link with the contraband. As was done in the brief, we will discuss all three grounds of error together following a short discussion of the evidence.

Officers Myers and Fuqua in answering an anonymous call concerning the odor of burning marihuana coming from appellant's apartment, knocked on the door and were admitted by appellant's nephew, Childress. The officers smelled burning mari-huana and noticed a burning marihuana cigarette on an ashtray in the living room. They observed a bulge under Childress's shirt and when asked to raise his shirt the officers observed a plastic bag of marihuana. When asked if there was any more marihuana in the house, Childress led the officers to the kitchen and showed them two more bags of marihuana in a cabinet. The officers then asked who lived in the apartment and whether anyone else was there at the time. Childress stated that his uncle, the appellant, lived there with appellant's girlfriend, Nan Armstrong, and that appellant was asleep in the bedroom. The officers could see through an open door that a white male appeared to be asleep on the bed. One of the officers was apparently acquainted with the appellant's name and decided to radio the police dispatcher to ascertain whether a warrant was outstanding for appellant's arrest. Approximately five minutes later, the officers received an affirmative response to their inquiry. After receiving this information, the officers entered the bedroom for the first time, awakened the appellant and placed him under arrest on the outstanding traffic warrant. Upon entering the bedroom, Officer Myers noticed a large glass beaker about the size of a basketball on the floor of an open door closet. He testified that he associated the beaker with the manufacture of drugs. After arresting the appellant, Myers went over to the open closet containing men's clothing and viewed several other items of glassware associated with the manufacture of amphetamine, plus a couple of bags of white powdery substance later determined to be amphetamine. Also found was a bank bag, inside which were appellant's business card and photographs of a drug laboratory. Also recovered was some cash money and a pistol from the headboard of the bed upon which appellant slept.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on rehearing). A conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused. *Jackson v. Virginia,* 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). Thus, it follows that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Jackson,* 672 S.W.2d at 803.

■ In cases of unlawful possession of controlled substances the State must prove: 1) that the accused exercised care, control and management over the contraband and 2) that the accused knew that the matter possessed was contraband. *Oaks v. State,* 642 S.W.2d 174, 176 (Tex.Crim.App.1982). These elements are not established merely by the presence of the accused at the premises where the contraband was possessed. *Rhyne v. State,* 620 S.W.2d 599, 601 (Tex. Crim.App.1981). When the accused is not shown to have been in exclusive possession of the place where the contraband is found, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the existence and location of the contraband and exercised some degree of control over it. *See Earvin v. State,* 632 S.W.2d 920, 924 (Tex.App.—Dallas 1982, pet. ref'd). Some of the factors which may be considered in linking the accused to the contraband are: 1) that the contraband was in plain view of the accused, 2) that it was in close proximity to the accused, and 3) that the accused was closely related to other persons in joint possession of the contraband or who owned the premises in which the contraband was found. *Id.*

■ In the instant case, although it is not clear that the amphetamine could be viewed from the bed where appellant slept, the officer testified the glassware could be seen from the bed and that the contraband was within approximately five feet of the appellant. There was evidence the appellant lived in the apartment with his girlfriend, the apartment lessee. There also was testimony that there was a strong chemical odor in the bedroom and on appellant's person which the officers associated with the manufacture of amphetamine. There was only men's clothing in the closet where the glassware and amphetamine were located. A bank bag containing appellant's business card and photographs of a drug laboratory were also found in the closet. A few days after the arrest of the appellant on the traffic warrant, when the officers went to the apartment to arrest Nan Armstrong, they found appellant in a state of undress in the bathroom and, when told to get dressed, he obtained clothing from the bedroom. We find that these circumstances establish more than a suspicion or probability of appellant's possession, control and knowledge of the existence and location of the contraband. There was sufficient evidence to affirmatively link the appellant with the contraband and show his knowledge that it was in fact contraband. Appellant's grounds of error two, three and four are overruled.

■ In his fifth ground of error appellant alleges the trial court erred in not granting his motion to suppress the introduction into evidence of the contraband on the basis it was seized as a result of an illegal search and/or seizure. The appellant contends the police officers had no right to be in the bedroom where the contraband was seized. The State responds that a search of the bedroom was justified because (1) probable cause existed for further search of the bedroom upon the recovery of marihuana from the kitchen and observance of a burning marihuana cigarette in the front room; and/or (2) probable cause existed for a cursory search for self-protection. We disagree.

Warrantless searches are per se unreasonable and are subject only to a few specifically established and well-delineated situations and the burden rests on the State to show the existence of such an exceptional situation. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); *Pope v. State,* 635 S.W.2d 815, 818 (Tex.App.—Dallas 1982, no pet.). In support of its contention that finding marihuana in the front room and kitchen gave rise for probable cause for a warrantless search of the bedroom, the State's brief cites *Isam v. State,* 582 S.W.2d 441 (Tex.Crim.App.1979); *Razo v. State,* 577 S.W.2d 709 (Tex.Crim.App.1979); and *Albro v. State,* 502 S.W.2d 715 (Tex. Crim.App.1973). The first two cases are distinguishable as being cases when police officers had stopped vehicles and later determined there was contraband in plain view in the vehicles. The exigent circumstances of a moveable vehicle are not present in the instant case. The *Albro* case does not hold that a warrantless *search* of the entire premises is authorized when contraband has been recovered, but merely holds there is probable cause for continued *investigation* when police officers, lawfully on the premises, observe contraband in plain view.

■ A warrantless search of one's premises is generally limited to the area of which the arrested person has immediate access and is based on the premise of self-protection. *See Chimel v. California,* 395 U.S. 752, 763–64, 89 S.Ct. 2034, 2040–41, 23 L.Ed.2d 685 (1969); *Brown v. State,* 605 S.W.2d 572, 576 (Tex.Crim.App.1980); and *Pope,* 635 S.W.2d at 818. Neither officer testified they were in fear for their safety nor did they testify as to any facts which would support a search for self-protection. During the time they awaited information about outstanding arrest-warrants, the appellant apparently did nothing to arouse their suspicion that they might be in danger. There must be circumstances present that support a reasonable belief that the appellant was armed or presently dangerous. *See Lippert v. State,* 664 S.W.2d 712, 719 (Tex.Crim.App.1984).

We hold that the State did not show that an expanded search was necessary for the officers' protection. Neither did the State meet its burden of establishing the existence of any other exceptional situation that constituted probable cause for a search of the bedroom.

The State alternatively contends there was in fact no search of the bedroom but that the officers had probable cause to enter the bedroom to (1) execute a traffic warrant and (2) to continue their investigation concerning appellant's possible connection with the marihuana recovered from the apartment occupied by appellant and (3) to arrest appellant for the marihuana found in the kitchen. The State further contends that while lawfully in the bedroom, the officers viewed the contraband in plain view through the open door to the closet. With the contention relative to continued investigation we agree.

■ The contention as to the right to arrest will be addressed first. In Texas, statutes exclusively control any right to arrest a suspect without a warrant, and the existence of that right depends on facts existing at the time of arrest. *Giacona v. State,* 164 Tex.Crim. 325, 298 S.W.2d 587, 589 (1957). For statutes authorizing warrantless arrests *see* TEX.CODE CRIM. PROC.ANN. arts. 14.01, 14.02, 14.04 (Vernon 1977) and art. 14.03, Act of June 11, 1981, ch. 442, sec. 1, 1981 Tex.Gen.Laws 1865. An objective review of the facts in the record reveal the officers did not have sufficient facts to connect the appellant to the marihuana found in the kitchen. The mere discovery of the marihuana in the kitchen without more does not establish cause for arrest as "discovery of evidence of criminal activity during the execution of the search warrant does not … establish probable cause to arrest all persons present." *Lippert,* 664 S.W.2d at 722; U.S. CONST. amends. IV, XIV; TEX. CONST. art. I, sec. 9. Therefore, it follows if the officers have no warrant and cannot connect the appellant to the marihuana in

the kitchen, they have no right to arrest appellant.

 Regarding (1), above, in its second supplemental brief the State seems to contend the warrant was issued for the offense of "failure to appear;" however, the warrant clearly states the offense as "speeding." The only affidavit which would purport to establish probable cause for the issuance of such warrant is the complaint form dated September 27, 1983, alleging the offense to have occurred on or about July 12, 1983. The language in the document relied upon to establish probable cause is, "affiant has good reason to believe and does believe." It has been held this language is insufficient to provide probable cause for the issuance of an arrest warrant. *Green v. State*, 615 S.W.2d 700, 706 (Tex.Crim.App.1980). We, therefore, hold the warrant was invalid and would not support a lawful arrest of the appellant for speeding.

However, under the facts of this case, we are of the opinion that consideration must be given whether the exclusionary rule is applicable in a case where police officers, in good faith reliance on the assumption that a valid arrest warrant of the appellant was outstanding, entered appellant's bedroom to effect the arrest and as a result certain contraband came into plain view. We hold that the exclusionary rule does not apply in the instant case for the reasons herein stated.

 First, it should be noted that the appellant's motion to suppress and his objection to the evidence were based on constitutional application and not on the statutory provisions of TEX.CODE CRIM. PROC.ANN. art. 38.23 (Vernon 1979) which provides in pertinent part:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

The statutory provision goes beyond the requirements of the Federal Constitution; however, since there was no objection or motion to suppress made on the basis of this statutory provision, we must consider the subject on the basis of the Federal Constitution. *See Nelson v. State*, 607 S.W.2d 554, 555 (Tex.Crim.App.1980); *Hill v. State*, 643 S.W.2d 417, 419 (Tex.App.— Houston [14th Dist.]), *aff'd*, 641 S.W.2d 543 (Tex.Crim.App.1982).

 The exclusionary rule is not intended to punish errors of magistrates who issue warrants without sufficient proof of probable cause, but is designed to deter police misconduct. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 3418, 82 L.Ed.2d 677 (1984). In the instant case, the police officers exercised exemplary, if not in fact excessive, caution in attempting to make certain that appellant's constitutional guarantees were not violated. Although Sgt. Fuqua testified he believed that they had the right to further investigate the appellant as to his connection with the marihuana they had found in the apartment, and although they would have had the right of cursory search for self-protection had they been concerned about their own safety, the officers, out of an abundance of precaution, made inquiry whether appellant was wanted on an outstanding warrant before entering the bedroom. This does not appear to be the conduct of police officers who disregard and run roughshod over the constitutional guarantees and safeguards of a free society. To apply the federal exclusionary rule under the facts of this case would serve to discourage police officers from performing their duty in a reasonable and objective manner. To penalize law enforcement officers for errors by magistrates cannot logically contribute to the deterrence of Fourth Amendment violations by police officers. *Id.* We therefore hold that although the traffic warrant will not support appellant's arrest, the trial court did not commit reversible error in denying appellant's motion to suppress the contraband found in plain view when the officers entered the bedroom to execute the warrant.

Further, although a review of the two officers' testimony reveals that at the time they entered the bedroom, they did so for the purpose of executing the traffic warrant, the officer's subjective state of mind is not the controlling factor. To the contrary, in determining whether the officers were authorized to enter the bedroom for any legal purpose, there must be an objective assessment made, *by the court*, of the officer's actions in light of the facts and circumstances known to such officer. *See Maryland v. Macon*, 472 U.S. ——, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). *See also Voelkel v. State*, No. 339–82, slip opinion at p. 7 (Tex.Crim.App., May 14, 1986) (not yet reported); *Townsley v. State*, 652 S.W.2d 791, 796 (Tex.Crim. App.1983); *Esco v. State*, 668 S.W.2d 358, 366 (Tex.Crim.App.1982) (opinion on rehearing); *Simpson v. State*, 486 S.W.2d 807 (Tex.Crim.App.1972).

An objective review and assessment reveals (1) the officers knew someone had been smoking marihuana in the living room because of the burning marihuana cigarette; (2) appellant was a resident of the apartment; (3) appellant was physically present at the time; and (4) contraband had been found in the kitchen of the apartment in which appellant was said to have resided.

Our research has failed to reveal any Texas case that determines a police officer's right to investigate or interrogate a resident of premises where contraband has been seized. However, common sense dictates that reasonable police procedures require such investigation and interrogation. *See Guevara v. Superior Court*, 86 Cal. Rptr. 657, 7 Cal.App.3d 531 (1970); *State v. O'Brien*, 70 Wis.2d 414, 234 N.W.2d 362 (1975). We therefore hold that the police officers had the right to enter the bedroom to investigate or interrogate appellant to establish his possible connection with the marihuana.

Once lawfully on the premises, a police officer may seize contraband which is in plain view. *See Clark v. State*, 548 S.W.2d 888, 889 (Tex.Crim.App.1977). It was not error to admit the contraband which was in plain view through the open door closet of the bedroom. Appellant's fifth ground of error is overruled.

In appellant's sixth ground of error, he complains the court erred in admitting the two bags of amphetamine into evidence because the chain of custody was not properly established. We disagree.

Officer Myers testified he and Sgt. Fuqua took the items seized from the apartment to Myers' vehicle and locked them in the trunk. The vehicle was then driven to the police station and the seized items were inventoried and tagged by Myers before being placed in the police department property room. The bags of white powder were put in one large bag, sealed and initialed. Officer Singleton retrieved the sealed bag and ran presumptive chemical analysis on the contents. He then resealed the bag and placed it back in the property room. The contraband was next taken from the property room to the crime lab by Officer Nowland where he turned over the sealed bag to the laboratory clerk and a "couple of the lab technicians." Frank Shiller, Director of the Fort Worth Police Department Crime Laboratory, testified that the last initial on the bag belonged to Steve Chang, a criminologist at the lab. Evidence presented at trial established that the chain of custody was completed inside the laboratory. Any further objection goes to the weight of the evidence and not to its admissibility. *See Medellin v. State*, 617 S.W.2d 229, 232 (Tex.Crim.App.1981).

The appellant relies on *Jones v. State*, 538 S.W.2d 113 (Tex.Crim.App.1976), and *Easley v. State*, 472 S.W.2d 128 (Tex.Crim. App.1971), however, the facts of those cases are distinguishable from the facts of this case. In *Easley*, the officer placing the evidence in a bag did not place any identifying marks on the contraband or the container in which it was mailed to the laboratory. *Easley*, 472 S.W.2d at 129. In the instant case the evidence was properly

marked and identified. In *Jones*, the witness did not identify the evidence as being that seized from the accused. *Jones*, 538 S.W.2d at 114. Such are not the facts of this case. Appellant's sixth ground of error is overruled.

In the seventh ground of error appellant complains of the trial court overruling appellant's hearsay objection to the testimony of Frank Shiller as to Steve Chang's test results.

Frank Shiller testified that he was the Director of the Fort Worth Police Department Crime Laboratory and custodian of its records. Shiller further testified he was Steve Chang's supervisor and that Steve Chang made the test results report. A custodian of laboratory records may testify as to the test results contained in a laboratory report even though the custodian did not personally make the test. *See Alvarez v. State*, 508 S.W.2d 100, 102 (Tex. Crim.App.1974). Also, as Chang's supervisor, Shiller may testify as to test results obtained by his subordinate. *See Brooks v. State*, 642 S.W.2d 791, 793 (Tex.Crim.App. 1982). Appellant's seventh ground of error is overruled.

The judgment of the trial court is affirmed.